WEIN II, LLC, Plaintiff v. WILLIAM D. PORTER and wife, MARY M. PORTER; DOUGLAS W. GOFF and wife, CATHY M. GOFF; S. PAULINE HENDERSON; JOSEPH M. BELL and wife, WILLDA Y. BELL; MADGE MARLER; ETHEL T. JACOBSON; TERRY L. ROGERS and wife, CAROLYN E. ROGERS; WANETA M. VAN DEUREN; STEPHEN MICHAEL TENSI, JR. and wife, RUTH ANN TENSI; JUSTUS DELANEY and wife, CLELLA DELANEY; JERRY M. MILLICAN and wife, CAROL L. MILLICAN; MORRIS McGOUGH and wife, ELIZABETH A. McGOUGH; MARTY M. JOLLEY; MICHAEL McGOUGH; MAUREEN WILLIAMS; BESSIE M. BARON; WATES AUSTIN COLE and wife, JAN SMITH COLE; TRUSTEES OF CHRIST UNITED METHODIST CHURCH, Weaverville, North Carolina, Defendants

No. COA08-1033

(Filed 4 August 2009)

**1. Civil Procedure— summary judgment—issues of law**

    The trial court did not err in a restrictive covenants case by concluding that only issues of law were presented.

**2. Deeds— restrictive covenants—ambiguity—vagueness**

    The trial court did not err by concluding that defendants were entitled to summary judgment as a matter of law and that the pertinent restrictive covenants were valid and binding on plaintiff even though plaintiff contends they are vague and ambiguous

because: (1) unless the covenants set out a specialized meaning, the language of a restrictive covenant is interpreted by using its ordinary meaning; (2) the plain language of the covenants in the instant case acknowledged that NC DOT restrictions may limit plaintiff's options for siting a driveway, expressed a desire that plaintiff's driveway be as far from the pertinent road as is permitted by NC DOT and other applicable regulations, set out a specific preferred driveway location, required good faith efforts by plaintiff to try to site the driveway at the preferred location, and provided that in no event shall the dual and separate entryways concept be changed; (3) contrary to defendants' assertions, no proof was offered that location A would ever have been permitted; and (4) the meaning of "existing" NC DOT regulations and "dual and separate entryways" is clear, neither phrase suffers from fatal ambiguity, the plain meaning of these terms is that plaintiff must follow pertinent NC DOT regulations and that the parties are restricted from sharing a common driveway, and the restrictive covenants are not void for vagueness and do not bar plaintiff from locating its driveway at location B.

**3. Deeds— restrictive covenants—run with land**

The trial court did not err by concluding that the pertinent restrictive covenants were valid and binding on plaintiff even though plaintiff contended the restrictive covenants did not meet the requirements for real covenants that run with the land because: (1) in the instant case the parties were either signatories to the original consent judgment or were their successors in interest, thus sufficiently establishing horizontal privity; and (2) the restrictive covenants touched and concerned the land since they address issues such as plaintiff's obligation to create a buffer between any commercial development and the defendants' neighborhood, setback requirements, etc.

**4. Deeds— restrictive covenants—public policy**

The trial court did not err by concluding that defendants were entitled to summary judgment as a matter of law and that the pertinent restrictive covenants were valid and binding on plaintiff even though plaintiff contended they offended public policy, violated substantive law, and are subject to avoidance for mutual mistake and impossibility of performance because: (1) plaintiffs' arguments on these issues were predicated upon the possibility that the Court of Appeals adopted defendants' interpretation of the restrictive covenants; (2) plaintiff did not argue that these

alleged problems with the restrictive covenants would still be present under its proposed interpretation of the covenants; and (3) as the Court of Appeals has rejected defendants' interpretation, these issues were not reached.

### 5. Deeds— restrictive covenants—requirements

Although defendants properly asserted on appeal that the restrictive covenants were valid real covenants running with the land and binding on the parties and were not void for vagueness or ambiguity, the restrictive covenants did not impose a categorical requirement that plaintiff's driveway be sited at location A and did not restrict plaintiff from locating a driveway at location B if that was the only place NC DOT will approve.

Appeal by Plaintiff from judgment entered 20 May 2008 by Judge James L. Baker in Buncombe County Superior Court. Heard in the Court of Appeals 24 February 2009.

*Patla, Straus, Robinson & Moore, P.A., by Brian D. Gulden, for Plaintiff-Appellant.*

*Biggers & Associates, PLLC, by William T. Biggers, for Defendant-Appellees.*

BEASLEY, Judge.

This appeal arises from the parties' disagreement about the application and interpretation of restrictive covenants recorded in a consent judgment. Plaintiff appeals from the trial court's entry of summary judgment in favor of Defendants. We affirm in part and reverse in part.

Plaintiff (Wein II, LLC) is a limited liability corporation doing business in Asheville, North Carolina, and is the current owner of a 4.4 acre tract (the property) located outside Asheville. The property is bounded on three sides by North Carolina limited access Highway 19-23, New Stock Road, Blueberry Hill Road, and "old 19-23" or Weaverville Road. Blueberry Hill Road connects Weaverville Road with a neighborhood of about fifteen houses, which is referred to in county land records as Section 3 Woodland Hills. Defendants are the property owners in Section 3 Woodland Hills.

Richard and Guelda Jones bought the property in 1976 and sold it to Kenneth Koehler in 1977, subject to restrictive covenants imposing general limitations on the development of the property. In 1994

WEIN II, LLC v. PORTER

[198 N.C. App. 472 (2009)]

Koehler filed a declaratory judgment action against property owners in Section 3 Woodland Hills, alleging that the restrictive covenants were "vague and ambiguous" and seeking a declaration that they were "void and unenforceable." In 1995 the parties negotiated an agreement and executed a consent judgment, which was signed by the trial court and filed in August 1995. The consent judgment struck the restrictive covenants, replaced them with eight new covenants, and stated that these covenants would "run with the land." The first five new covenants set out more detailed limitations on commercial development of the property, including restrictions on the number and type of permissible businesses, and required any developer to install fencing along the property line and create a buffer zone between the property and Section 3 Woodland Hills. The next three covenants are the source of the parties' disagreement. These covenants discuss the siting of the property's driveway, and express a preference that the driveway be located as shown on an attached "Exhibit A" (Location A). Location A is on Weaverville Road, about 20 yards from the intersection of Blueberry Hill Road and Weaverville Road.

The property remained undeveloped and was bought by Plaintiff in October 2002. In 2004 Plaintiff submitted a driveway permit application to the North Carolina Department of Transportation (NCDOT), requesting a permit to build a driveway at Location A. The NCDOT rejected Plaintiff's application on the basis of safety concerns about Location A. The only location that the NCDOT would approve for an entry onto the property was on Blueberry Hill Road, 125 feet from the intersection of Blueberry Hill Road and Weaverville Road, and about halfway between the houses in Section 3 Woodland Hills and Weaverville Road (hereafter Location B). In October 2006 Plaintiff obtained a driveway permit for Location B and hired a grading company to start clearing and grading the site. Defendants objected to this, on the grounds that situating the driveway at Location B violated the restrictive covenants in the 1995 consent judgment.

On 27 March 2007 Plaintiff filed a declaratory judgment action against Defendants, some of whom were also defendants in the 1995 action. Plaintiff sought a declaration that "the covenants contained in the Consent Judgment, and in specific, the limitation on placement of an entryway, are unenforceable and improper in all respects" and asserted various grounds for a declaration that the restrictive covenants were not enforceable. In its June 2007 answer, Defendants denied Plaintiff's allegations and brought a counterclaim for a decla-

ration that the restrictive covenants were valid and binding on Plaintiff, including the covenants addressing the siting of a driveway on the property. Both sides filed summary judgment motions, and on 20 May 2008 the trial court granted summary judgment for Defendants. The trial court's order ruled that the restrictive covenants were binding on Plaintiff. Plaintiff has appealed.

## Standard of Review

Plaintiff appeals from entry of summary judgment. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). The movant has the burden of "establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). The "standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

Regarding the evidence that the trial court may consider in ruling on a summary judgment motion, N.C. Gen. Stat. § 1A-1, Rule 56(e) (2007) provides in relevant part that:

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .

" 'The converse of this requirement is that affidavits or other material offered which set forth facts which would not be admissible in evidence should not be considered when passing on the motion for summary judgment.' " *Strickland v. Doe,* 156 N.C. App. 292, 295, 577 S.E.2d 124, 128 (2003) (quoting *Borden, Inc. v. Brower*, 17 N.C. App. 249, 253, 193 S.E.2d 751, 753, *rev'd on other grounds*, 284 N.C. 54, 199 S.E.2d 414 (1973)). "Hearsay matters included in affidavits should not be considered by a trial court in entertaining a party's motion for summary judgment. Similarly, a trial court may not consider that portion(s) of an affidavit which is not based on an affiant's personal knowledge." *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 776 (1998) (citing *Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 52, 191 S.E.2d 683, 688-89 (1972)).

" 'Where both competent and incompetent evidence is before the trial court, we assume that the trial court, when functioning as the finder of facts, relied solely upon the competent evidence and disregarded the incompetent evidence.' When sitting without a jury, the trial court is able to eliminate incompetent testimony, and the presumption arises that it did so." *In re Foreclosure of Brown*, 156 N.C. App. 477, 487, 577 S.E.2d 398, 405 (2003) (quoting *In re Cooke*, 37 N.C. App. 575, 579, 246 S.E.2d 801, 804 (1978); and citing *Walker v. Walker*, 38 N.C. App. 226, 228, 247 S.E.2d 615, 616 (1978)). "A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) (citing Rule 56(e)).

In the instant case, the trial court determined the summary judgment motion on the basis of admissible evidence contained in the deposition of William Porter, the exhibits, and the affidavits of Glenda Weinert, Greg Benton, and William Porter.

In its summary judgment order, the trial court stated in relevant part:

This cause was heard . . . on motions of the Plaintiff for summary judgment based upon Plaintiff's contentions that the restrictive covenants as contained in the Consent Judgment entered into in 94-CVS-3044 are void for vagueness and ambiguity in fact [and] . . . violate public policy, that the court's approval thereof in 1995 constituted an unconstitutional taking, and that mutual mistake and impossibility of performance render the covenants invalid[,] and [on] the motion of the Defendants for summary judgment contending that the Consent Judgment . . . is valid and binding on the Plaintiff and subsequent owners of the real property in question.

[I]t appears to the court that there are no genuine issues as to any material facts and that the Defendants are entitled to a judgment as a matter of law.

It is therefore ordered . . . that Plaintiff's motion for summary judgment is denied and that summary judgment is granted in favor of the Defendants against the Plaintiff. It is further ordered that the Consent Judgment entered into in 94-CVS-3044 is valid and binding on the Plaintiff and subsequent owners of the real

property in question, and that Plaintiff and subsequent owners are required to comply with the terms and conditions of the consent judgment.

**[1]** We first consider the trial court's conclusion that there were no genuine issues of material fact.

> In the instant case, each party claims entitlement to summary judgment based on its proposed interpretation of the terms of the same documents . . . . Thus[, "e]ach party based its claim upon the same sequence of events. . . . Neither party has challenged the accuracy or authenticity of the documents establishing the occurrence of these events. Although the parties disagree on the legal significance of the established facts, the facts themselves are not in dispute. Consequently, we conclude that there is no genuine issue as to any material fact surrounding the trial court's summary judgment order."

*Wal-Mart Stores, Inc. v. Ingles Mkts., Inc.*, 158 N.C. App. 414, 416-17, 581 S.E.2d 111, 114 (2003) (quoting *Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 359, 558 S.E.2d 504, 507 (2002)). We conclude that the trial court did not err by concluding that only issues of law are presented.

---

We next consider the court's conclusions that Defendants were entitled to summary judgment as a matter of law and that the restrictive covenants were valid and binding on Plaintiff. The trial court's order does not state the legal basis for its ruling. However, " '[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.' " *Hill v. West*, 189 N.C. App. 189, 190, 657 S.E.2d 694, 695 (2008) (quoting *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989)).

Regarding the general rules for restrictive covenants:

> an owner of land in fee has a right to sell his land subject to any restrictions he may see fit to impose, provided that the restrictions are not contrary to public policy. . . . A restrictive covenant is a real covenant that runs with the land of the dominant and servient estates only if (1) the subject of the covenant touches and concerns the land, (2) there is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenanting parties intended the benefits and the burdens of the covenant to run with the land.

*Runyon v. Paley*, 331 N.C. 293, 299-300, 416 S.E.2d 177, 182-83 (1992) (citing *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 669, 248 S.E.2d 904, 908 (1978)) (other citations omitted). "An enforceable real covenant is made in writing, properly recorded, and not violative of public policy." *Armstrong v. Ledges Homeowners Ass'n*, 360 N.C. 547, 555, 633 S.E.2d 78, 85 (2006) (citing *J. T. Hobby & Son, Inc. v. Family Homes of Wake Cty, Inc.*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981)) (other citations omitted).

The 2002 deed to Plaintiff transfers the property subject to "[e]asements, covenants, conditions and restrictions of record[.]" Neither party disputes that the restrictive covenants in the consent judgment were in writing, were properly recorded, and are among the "covenants, conditions and restrictions of record." Plaintiff, however, raises several other challenges to the validity of the restrictive covenants.

---

[2] Plaintiff first argues that the restrictive covenants at issue are void as a matter of law, on the grounds that they are vague and ambiguous. Defendants contend that the restrictive covenants are not vague, and assert that Defendants' proposed interpretation of the covenants is the only reasonable interpretation. Although we disagree with Plaintiff's contention that the restrictive covenants are vague, we agree with Plaintiff's position on the proper interpretation of the restrictive covenants.

We first review the principles that guide our analysis of restrictive covenants. "The word covenant means 'a binding agreement or compact benefitting both covenanting parties. . . . Covenants accompanying the purchase of real property are contracts which create private incorporeal rights, meaning non-possessory rights held by the seller, a third-party, or a group of people, to use or limit the use of the purchased property." *Armstrong*, 360 N.C. at 554, 633 S.E.2d at 84-85 (citation omitted). "Judicial enforcement of a covenant will occur as it would in an action for enforcement of 'any other valid contractual relationship.' . . . Thus, judicial enforcement of a restrictive covenant is appropriate at the summary judgment stage unless a material issue of fact exists as to the validity of the contract, the effect of the covenant on the unimpaired enjoyment of the estate, or the existence of a provision that is contrary to the public interest." *Page v. Bald Head Ass'n*, 170 N.C. App. 151, 155, 611 S.E.2d 463, 466 (2005) (quoting *Sheets v. Dillon*, 221 N.C. 426, 431, 20 S.E.2d 344, 347 (1942)).

We also note that:

> [w]hile the intentions of the parties to restrictive covenants ordinarily control the construction of the covenants, such covenants are not favored by the law, and they will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of land. The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent.

*Hobby & Son v. Family Homes*, 302 N.C. 64, 70-71, 274 S.E.2d 174, 179 (1981) (citing *Long v. Branham,* 271 N.C. 264, 156 S.E.2d 235 (1967); *Cummings v. Dosam, Inc.*, 273 N.C. 28, 159 S.E.2d 513 (1968); and *Stegall v. Housing Authority of the City of Charlotte*, 278 N.C. 95, 178 S.E.2d 824 (1971)) (other citations omitted). "The law looks with disfavor upon covenants restricting the free use of property. As a consequence, the law declares that nothing can be read into a restrictive covenant enlarging its meaning beyond what its language plainly and unmistakably imports." *Julian v. Lawton*, 240 N.C. 436, 440, 82 S.E.2d 210, 212 (1954) (citing *Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E.2d 134 (1951)) (other citation omitted).

" '[C]ovenants restricting the use of property are to be strictly construed against limitation on use, and will not be enforced unless clear and unambiguous[.]' This is in accord with general principles of contract law, that the terms of a contract must be sufficiently definite that a court can enforce them." *Snug Harbor Property Owners Asso. v. Curran*, 55 N.C. App. 199, 203, 284 S.E.2d 752, 755 (1981) (quoting *Property Owner's Assoc. v. Seifart*, 48 N.C. App. 286, 269 S.E.2d 178 (1980)) (other citations omitted). Accordingly, courts will not enforce restrictive covenants that are so vague that they do not provide guidance to the court. *Id.*

However, "[t]here is little case law addressing the question of what language in a restrictive covenant is void for vagueness, and what language is not. . . . It appears that we have not dealt with this 'void for vagueness' question because our courts usually supply a definition for an undefined term in a covenant rather than void the entire covenant." *Lake Gaston Estates Prop. Owners Ass'n v. County of Warren*, 186 N.C. App. 606, 612, 652 S.E.2d 671, 675 (2007). Unless the covenants set out a specialized meaning, the language of a restrictive covenant is interpreted by using its ordinary meaning. In the instant case, the first five restrictive covenants in the consent judgment state in relevant part that "the parties have agreed as follows":

1. That the Plaintiff . . . shall have the right to use and subdivide his above described property . . . [into] not more than two (2) lots or tracts. . . .

2. That the Plaintiff . . . may place or develop no more than one (1) fast food facility . . . on [the property.] . . .

3. That the second such lot may be used as permitted by current zoning regulations, save and excepting bars, game rooms and gas service stations or an additional fast food facility[.]

4. That the Plaintiff . . . shall retain and preserve a one hundred (100) foot buffer zone, . . . adjacent to Lots 1, 2, and 3, . . . [and] shall establish an easement for the benefit of the Defendants[.] . . .

5. That upon the development [of the property] . . . an eight (8) foot fence shall be erected on the property line separating the property . . . [and] Section 3 Woodland Hills. . . . [The] fence shall be located on the Plaintiff's side of the ten (10) feet utility easement[.] . . .

(emphasis added). These covenants state specific rules and express Plaintiff's obligations in unmistakably mandatory language, as duties Plaintiff "shall" honor. The next three covenants employ a different vocabulary and tone:

6. That the parties hereto recognize and understand that there exists Controlled Access designation . . . restricting access to the property of the Plaintiff[.] . . .

7. That the Plaintiff . . . reserve[s] the right to attempt to obtain access over the Controlled Access area for . . . ingress, egress and regress to [the property];

8. That the parties hereto understand and desire that access for ingress, egress and regress . . . of the [property] . . . shall be as far away from Blueberry Hill Road, . . . as permitted by existing [NCDOT] and other applicable regulations. To this end . . . Plaintiff . . . shall use good faith efforts to structure the access as set forth in Exhibit 'A' as the said access may be approved by [governmental agencies] . . . with only such minor variations as might reasonably be required. In no event, however, shall the dual and separate entryways concept be changed. It being the intent of the parties that the parties shall

> at all times <u>maintain the concept of separate accesses to their
> respective properties</u>. . . .

(emphasis added). "Presumably the words which the parties select
were deliberately chosen and are to be given their ordinary signifi-
cance." *Briggs v. Mills, Inc.*, 251 N.C. 642, 644, 111 S.E.2d 841, 843
(1960) (citations omitted). In this case, the plain language of the
covenants: (1) acknowledges that NCDOT restrictions that may limit
Plaintiff's options for siting a driveway; (2) express a "desire" that
Plaintiff's driveway be as far from the Blueberry Hill Road as is per-
mitted by NCDOT and other "applicable regulations"; (3) set out a
specific preferred driveway location; (4) require "good faith efforts"
by Plaintiff to try to site the driveway at the preferred location, and;
(5) provide that in no event shall the "dual and separate" entryways
concept be changed.

The restrictive covenants do not however forbid Plaintiff from
siting its driveway on a particular public road, such as Blueberry Hill
Road. Nor do the covenants state that Plaintiff cannot build a drive-
way off the same road that connects Defendants' neighborhood with
Weaverville Road. The covenants do not state that the only location
Plaintiff may place a driveway is at Location A. We conclude that
these restrictive covenants state a preference for Plaintiff's driveway
to be sited at Location A, and require "good faith" efforts to achieve
this goal, while recognizing that NCDOT regulations may determine
the ultimate location of the driveway. We further conclude that the
restrictive covenants contain no language barring Plaintiff from siting
his driveway at Location B.

We have considered the parties' arguments about the meaning of
the word "existing" in the restrictive covenants statement that the
parties "desire that access for ingress, egress and regress [of the
property] . . . shall be as far away from Blueberry Hill Road, . . . as per-
mitted by existing [NCDOT] and other applicable regulations." We
conclude that this part of the restrictive covenants is simply an
acknowledgment that, notwithstanding the parties' expressed desire
to site Plaintiff's driveway at Location A, Plaintiff will be required to
comply with the NCDOT regulations in effect at the time he makes an
application for a driveway permit.

Defendants assert that "existing" refers to the governmental reg-
ulations in effect when the parties signed the consent judgment.
Defendants argue that this conclusion is required by *Bicket v.
McLean Securities, Inc.*, 124 N.C. App. 548, 478 S.E.2d 518 (1996). We

disagree. In *Bicket*, the parties were in dispute over which country club privileges were granted by different classes of membership. In 1980 the parties executed a consent judgment providing in part that country club members would have the "use of all existing golf courses." During the following decade, the country club made various changes, including adding new golf courses, increasing fees, and creating additional classes of membership. This Court held that the promise of the "use of all existing golf courses" was limited to those golf courses that physically "existed" at the time the consent judgment was signed, and did not guarantee access to golf courses constructed years later.

The holding of *Bicket* appropriately interpreted the reference to existing golf courses, because a golf course is a tangible entity with a physical "existence." However, *Bicket* is easily distinguished from the instant case and is not controlling precedent. Laws and regulations are not physical objects, and the parties are presumed to know that statutes and regulations are subject to change. Thus, "existing" regulations are necessarily those that "exist" when an applicant seeks a driveway permit. Further, even without this phrase in the restrictive covenant, Plaintiff would be required to follow NCDOT regulations in effect when it applies for a driveway permit. Therefore, this phrase does not add additional restrictions, but merely acknowledges that NCDOT and other regulations might prohibit locating the driveway at Location A.

Defendants, however, assert that the word "existing" refers exclusively to the laws and regulations "existing" in 1995 when the consent judgment was signed. Defendants fail to explain how the covenant could possibly "run with the land" if Plaintiff's successors in interest were unable to comply with regulations in effect when they sought a driveway permit. Defendants contend that any application made under regulations not "existing" in 1995 would be "untimely." We reject Defendants' assertion for several reasons.

Firstly and most importantly, the consent judgment <u>does not state</u> any of the restrictions urged by Defendants. It does not state that Location A is permissible as of the time the consent judgment was executed, and does not impose a time limit on Plaintiff's application for a driveway permit. Defendants would have us interpret the restrictive covenants to include additional restrictions that are not in the actual document. We decline. "Restrictive covenants cannot be established except by a[n] instrument of record contain-

ing adequate words so unequivocally evincing the party's intention to limit the free use of the land that its ascertainment is not dependent on inference, implication or doubtful construction. . . . 'The courts are not inclined to put restrictions in deeds where the parties left them out.' " *Marrone v. Long*, 7 N.C. App. 451, 454, 173 S.E.2d 21, 23 (1970) (quoting *Hege v. Sellers*, 241 N.C. 240, 249, 84 S.E.2d 892, 899 (1954) and citing *Turner v. Glenn*, 220 N.C. 620, 18 S.E.2d 197 (1942)).

Defendants' position is predicated upon their unsupported claim that, had application been made in 1995, Location A would have been approved. Contrary to Defendants' assertions, no proof was offered that location A would ever have been permitted. In his deposition, William Porter discussed Exhibit A, depicting Location A. He admitted that he was not present when the sketch was made and did not know who had drawn it. His personal opinion regarding the likelihood that Location A might have been approved in 1995 was based solely on speculation. Defendants presented no testimony from NCDOT representatives, no certified documentary exhibits showing approval, or any other admissible evidence that this location would have been possible at any time. Nor do Defendants articulate any reasonable basis for their contention that the NCDOT would ever have approved a driveway so close to the intersection of Blueberry Hill Road and Weaverville Road.

Plaintiff argues on appeal that the term "existing" should be held to allow a driveway as permitted by regulations "existing" when it applied for a permit, as this is the less restrictive reading. We agree and conclude that "existing" NCDOT regulations are regulations in effect when application is made for a driveway permit. Furthermore, regardless of which regulations are deemed to be pertinent to the application, the restrictive covenants require only a "good faith" effort to site the driveway at A, and do not make this location mandatory. Plaintiff "contends that its driveway permit complies with the covenants" because its access is as far from Blueberry Hill Road "as permitted by NCDOT regulations that existed on the date the application was made." We express no opinion on whether Plaintiff has otherwise complied with the restrictive covenants, but agree with Plaintiff that it has adhered to this particular requirement.

The other phrase that is discussed in the parties' appellate briefs is the restrictive covenants' provision that the parties would always maintain "dual and separate" entryways into their respective properties. In his deposition, Porter testified that the restrictive covenants

stated "thou shalt not access Blueberry Hill Road for any purpose[.]" In fact, the restrictive covenants do not state this or anything similar to this. As discussed above, these three covenants appear to recognize the likelihood that the parties' preferences will be modified by applicable regulations. Porter may have been referring to the provisions regarding "dual and separate entryways." We reiterate that, unless a specialized definition is provided, the language in a contract will be " 'given effect according to the natural meaning of the words used.' " *Rosi v. McCoy*, 319 N.C. 589, 592, 356 S.E.2d 568, 570 (1987) (quoting *Callahan v. Arenson*, 239 N.C. 619, 625, 80 S.E.2d 619, 623-24 (1954)).

In the instant case, the restrictive covenants provide no specialized definition for these words. The Merriam-Webster Online Dictionary 2009[1], defines "dual" in relevant part as "consisting of two parts or elements or having two like parts"; "separate" as "not shared with another"; "entryway" as "a passage for entrance"; and "driveway" as "a private road giving access from a public way to a building on abutting grounds." An "entryway" is different from a public road, such as Weaverville Road or Blueberry Hill Rd. The covenant's reference to "dual and separate entryway" into the parties' respective properties plainly expresses a requirement that the parties' each have their own driveway, with no shared driveway. In the instant case, the parties each have a separate driveway and it is undisputed that siting Plaintiff's driveway at Location B would not trespass on any of the Defendants' properties. Therefore, applying the plain ordinary meaning of the words used, it appears that the parties have the requisite "separate accesses to their respective properties" if Plaintiff's driveway is sited at Location B.

Defendants would have us interpret this as meaning "Plaintiff's driveway shall not be located on the same public road that leads to our neighborhood." However, the parties did not draft a restrictive covenant that would forbid Plaintiff from constructing a driveway along Blueberry Hill Road. We must presume that no such limit was intended.

We conclude that the meaning of "existing [NCDOT]" regulations and "dual and separate entryways" is clear; that neither phrase suffers from fatal ambiguity; and that the plain meaning of these terms is that Plaintiff must follow pertinent NCDOT regulations and that the parties are restricted from sharing a common driveway. We conclude

---

1. http://www.merriam-webster.com/dictionary/

that the restrictive covenants are not void for vagueness, and do not bar Plaintiff from locating its driveway at location B.

---

[3] Plaintiff also argues that the restrictive covenants do not meet the requirements for real covenants that run with the land. We disagree.

"A restrictive covenant is a real covenant that runs with the land of the dominant and servient estates only if (1) the subject of the covenant touches and concerns the land, (2) there is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenanting parties intended the benefits and the burdens of the covenant to run with the land." *Runyon v. Paley*, 331 N.C. at 299-300, 416 S.E.2d at 183 (citation omitted). Regarding the "touch and concern" requirement, *Runyon* stated:

> [f]or a covenant to touch and concern the land,. . . [i]t is sufficient that the covenant have some economic impact on the parties' ownership rights by, for example, enhancing the value of the dominant estate[.] . . . It is essential, however, that the covenant in some way affect the legal rights of the covenanting parties as landowners.

*Id.* at 300, 416 S.E.2d at 183 (citations omitted). Regarding privity, *Runyon* held that:

> most states require two types of privity: (1) privity of estate between the covenantor and covenantee at the time the covenant was created ("horizontal privity"), and (2) privity of estate between the covenanting parties and their successors in interest ("vertical privity"). . . . Vertical privity, which is ordinarily required to enforce a real covenant at law, requires a showing of succession in interest between the original covenanting parties and the current owners of the dominant and servient estates. . . . [T]o show horizontal privity, it is only necessary that a party seeking to enforce the covenant show that there was some "connection of interest" between the original covenanting parties[.]

*Id.* at 302-03, 416 S.E.2d at 184. In the instant case, the parties are either signatories to the original consent judgment, or are their successors in interest. We conclude that this sufficiently establishes horizontal privity. The restrictive covenants address issues such as Plaintiff's obligation to create a buffer between any commercial

**WEIN II, LLC v. PORTER**

[198 N.C. App. 472 (2009)]

development and the Defendants' neighborhood, setback require-
ments, etc. We easily conclude that these "touch and concern" the
land. This assignment of error is overruled.

---

[4] Plaintiff also argues on appeal that, if the restrictive covenants
are interpreted as proposed by Defendants, they would offend public
policy, violate substantive law, and be subject to avoidance for
mutual mistake and impossibility of performance. In addition,
Plaintiff asserts that, if it is forced to comply with Defendants' inter-
pretation of the restrictive covenants, it then would be entitled to an
easement by necessity, or financial compensation for an unconstitu-
tional taking of property. However, Plaintiffs' arguments on these
issues are predicated upon the possibility that this Court adopts
Defendants' interpretation of the restrictive covenants. Plaintiff does
not argue that these alleged problems with the restrictive covenants
would still be present under its proposed interpretation of the
covenants. As we have rejected Defendants' interpretation, we do not
reach these issues.

---

[5] Defendants argue on appeal that the restrictive covenants are
valid real covenants running with the land and binding on the parties.
They also assert that the covenants are not void for vagueness or
ambiguity. We agree with these contentions. However, we conclude
that the restrictive covenants do not impose a categorical require-
ment that Plaintiff's driveway be sited at location A, and do not
restrict Plaintiff from locating a driveway on Blueberry Hill Road, if
that is the only place the NCDOT will approve.

We conclude that the trial court did not err by entering an order
finding the general validity and enforceability of the restrictive
covenants and their applicability to the parties. We further conclude
that, as a matter of law, that the Plaintiff, and subsequent owners,
must comply with the terms and conditions of the consent judgment.
And lastly, we conclude that the restrictive covenants do not forbid
Plaintiff from constructing a driveway on Blueberry Hill.

Affirmed in part, reversed in part.

Judges McGEE and GEER concur.