Syndicated Servs., Inc. v. Yarbrough, 2017 NCBC 13.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 20912

SYNDICATED SERVICES, INC. d/b/a )
WORKERS' COMPENSATION )
AGENT EXCHANGE, )
               )
         Plaintiff, )
               )
      v. )
               )
JOHN STANLEY YARBROUGH, III, )
               )
         Defendant. )
               )

ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS

1. **THIS MATTER** is before the Court on Defendant John Stanley Yarbrough, III's ("Defendant") Motion to Dismiss (the "Motion") received by counsel for Plaintiff Syndicated Services, Inc. ("Plaintiff" or the "Corporation") on December 20, 2016 and thereafter filed with the Court by Plaintiff's counsel on January 6, 2017. For the reasons stated below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion.

> *Hamilton Stephens Steele & Martin, PLLC by Mark R. Kutny, for Plaintiff Syndicated Services, Inc.*

> *John Stanley Yarbrough, III, appearing pro se.*

Robinson, Judge.

## I.    INTRODUCTION

2. This lawsuit arises out of Defendant's actions after the Corporation terminated Defendant's employment. Plaintiff alleges that Defendant took Confidential Information—computer code and customer contact information—and

used the Confidential Information to compete against the Corporation. The Court concludes that the allegations of the Verified Complaint ("Complaint") are sufficient to state claims for breach of contract, breach of the duty of good faith and fair dealing, misappropriation of trade secrets, and unfair and deceptive trade practices. On the other hand, the Court concludes that the allegations of the Complaint are insufficient to state a claim for tortious interference with contract. Therefore, the Court grants in part and denies in part the Motion.

## II.  PROCEDURAL HISTORY

3.     Plaintiff initiated this action by filing its Complaint on November 17, 2016.

4.     This case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated November 18, 2016 and assigned to the undersigned by order of Chief Business Court Judge James L. Gale dated November 29, 2016.

5.     Defendant was personally served with the summons and Complaint on November 21, 2016.

6.     On December 20, 2016, Plaintiff's counsel received by mail from Defendant the Motion and Defendant's memorandum in support of the Motion. Defendant's memorandum in support of the Motion argues that the Complaint fails to state a claim upon which relief can be granted. Therefore, even though not expressly stated in the Motion or Defendant's brief, the Motion is deemed by the Court to be made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

7. On January 6, 2017, Plaintiff filed its brief in opposition to the Motion (the "Response").

8. On January 6, 2017, the Court entered a Scheduling Order that reminded the parties that the deadline for Defendant to file and serve his reply brief was January 19, 2017. Defendant did not file a reply brief. The Court held a hearing on the Motion on February 14, 2017, and the Motion is now ripe for resolution.

## III. FACTUAL BACKGROUND

9. The Court does not make findings of fact on the Motion under Rule 12(b)(6), but only recites those allegations of the Complaint that are relevant and necessary to the Court's determination of the Motion.

10. The Corporation is a North Carolina corporation with its principal place of business in Ponce Inlet, Florida. (Verified Compl. ¶ 1 [hereinafter Compl.].)

11. Defendant, a resident of Florida, is a former employee of the Corporation who worked for the Corporation in both North Carolina and Florida. (Compl. ¶ 2.)

12. David Bell ("Mr. Bell") and Tracy Bell ("Mrs. Bell")—Defendant's step-father and mother—are the Chief Executive Officer and Secretary/Treasurer, respectively, of the Corporation. (Compl. ¶ 6.)

13. The Corporation provides staffing solutions, worker's compensation insurance, payroll, and other employee benefit services to companies in all fifty states. (Compl. ¶ 7.)

14. The Corporation created a proprietary product, Staff Pro+, "which offers clients the ability to outsource and manage on-boarding paperwork electronically,

including employment agreements, employment eligibility, and enrollment documents." (Compl. ¶ 9.)

15. Mr. Bell wrote the computer code for Staff Pro+ to work with other products offered by the Corporation. (Compl. ¶ 10.) Staff Pro+ is integrated with PayPal for billing and utilizes Zoho database management. (Compl. ¶ 12.) Staff Pro+ is currently only offered in Georgia, Alabama, and New York. (Compl. ¶ 7.)

16. On or about July 12, 2013, the Corporation hired Defendant to work part-time. (Compl. ¶ 15.) On or about October 1, 2013, Defendant began working for the Corporation full-time and assisting with the coding of the Corporation's proprietary software. (Compl. ¶ 15.) Defendant learned the programing, implementation, and design behind the Corporation's products, including Staff Pro+. (Compl. ¶ 16.)

17. All of the Corporation's employees were required to sign a Confidentiality and NonCircumvention Agreement (the "Confidentiality Agreement"). (Compl. ¶ 18.) Defendant executed the Confidentiality Agreement on October 1, 2013. (Compl. ¶¶ 3, 29, Ex. A [hereinafter Confidentiality Agreement].) Execution of the Confidentiality Agreement was a condition precedent to Defendant's employment by the Corporation. (Compl. ¶ 38.)

18. The Confidentiality Agreement states that in the event of a breach or threatened breach of the Confidentiality Agreement, "[j]urisdiction and venue for any such proceeding shall be exclusively in North Carolina." (Confidentiality Agreement ¶ 5.) The Confidentiality Agreement also includes a choice of law provision that

states that the agreement shall be governed by and interpreted under North Carolina law. (Confidentiality Agreement ¶ 5.)

19.     The Confidentiality Agreement has a five-year term and provides that a party to whom Confidential Information is disclosed will

> a. Use such Confidential Information solely for the [potential business relationship between the Parties];
>
> b. Not disclose the Confidential Information voluntarily to any person, organization, body, committee, commission, tribunal or any other entity;
>
> c. Maintain the confidence of such Confidential Information with at least the same ardor and care with which it protects its own confidential or proprietary information, and at a minimum in accordance with reasonably prudent standards;
> . . . .
>
> e. Promptly return to the Disclosing Party, upon its request, or certify as destroyed, Information in whatever form, including all electronic and magnetic copies and notes thereof.

(Confidentiality Agreement ¶¶ 2, 7.)

20.     The Confidentiality Agreement defines "Confidential Information" as

> all non-public information designated as being confidential or which, under the circumstances surrounding disclosure, ought to be treated as confidential, as well as any derivatives thereof, including but not limited to . . . all information oral, written or otherwise exchanged between the parties hereto concerning [the potential business relationship between the Parties], including but not limited to financial information, development plans, marketing plan, business opportunities, personnel, and research.

(Confidentiality Agreement ¶ 1.)

21.     In or around November 2015, the Corporation created a new Employee Handbook. (Compl. ¶ 41.) Defendant signed an acknowledgment that he had received the Employee Handbook on November 24, 2015. (Compl. ¶ 44.) The

Employee Handbook defines the Corporation's "Confidential Information" as "any information in the possession of Employee, whether created by [the Corporation], Brokers or clients, which is kept or intended to be kept as a secret from others[.]" (Compl. Ex. B, at 17 [hereinafter Employee Handbook].)

22.     As provided by the Employee Handbook, employees, even after leaving the Corporation, are required to "maintain[] the confidentiality of information which was provided during [the employee's] employment with [the Corporation]."  (Employee Handbook 18.)

23.     Additionally, the Corporation protects its trade secrets—including Staff Pro+, e-mail lists of brokers and customers, and computer programs—by restricting access to the Confidential Information.  (Compl. ¶ 17.)  When an employee logs into the Corporation's system to access Staff Pro+, a prompt is displayed that reads

> View User Agreement
>
> By entering, this application, you are agreeing to the user agreement as published.  Your IP Address and username have been collected.  If you do not agree to these terms, you must immediately close this application and cease using it.  Navigating away from this tab constitutes agreement with each applicable agreement.

(Compl. ¶ 21.)  The User Agreement referenced in the display prompt provides

> USER agrees not to use for itself or others any Confidential Information, including client list, about [the Corporation] or its business without the prior written consent of [the Corporation].
> . . . .
>
> For the purposes of the Agreement, "Confidential Information" shall mean trade, as well as any information in the possession of [the Corporation], . . . which is kept or intended to be kept as a secret from others, whether or not the secret or confidential information provides a measureable commercial benefit to [the Corporation] . . . .

(Compl. ¶ 22.)

24. Defendant had administrative rights to Staff Pro+'s code that allowed Defendant to edit and copy the code. (Compl. ¶ 24.) Defendant was familiar with the insurance brokers with whom the Corporation contracted to sell Staff Pro+ and had access to the brokers' e-mail addresses. (Compl. ¶ 25.)

25. On January 19, 2016, Mr. Bell informed Defendant that they would need to make arrangements for Defendant to pursue employment elsewhere. (Compl. ¶ 46.) Mr. Bell asked Defendant to return his Corporation-issued laptop to the Corporation, but Defendant refused. Plaintiff contends that Defendant refused because Defendant had copied a version of Staff Pro+'s code onto his Corporation-issued laptop, which Defendant intended to use to create a competing company. (Compl. ¶¶ 48–49.)

26. On March 7, 2016, Defendant filed Articles of Incorporation for Think Employer, LLC ("Think Employer") with the Florida Secretary of State. (Compl. Ex. D.)

27. Think Employer offers insurance, payroll, marketing, and human resource services. (Compl. ¶ 52.) Think Employer also offers a product called Cert-Today, which offers payroll and worker's compensation assistance to small employers. (Compl. ¶ 52.) Cert-Today's initial pricing structure is the same as Staff Pro+ with both requiring an initial fee of $250 and a monthly fee of $100. (Compl. ¶ 53.) Both programs claim to provide customers with access to A-rated insurance carriers licensed in Georgia with "worry-free billing" through PayPal. (Compl. ¶ 53.)

28. Plaintiff alleges that Defendant took Staff Pro+'s code—along with other Confidential Information—and replicated Staff Pro+'s design to start Cert-Today. (Compl. ¶ 55.)

29. Peter Morrison ("Mr. Morrison"), a high-volume insurance broker who originally contracted with Plaintiff, cancelled all of his active accounts with Plaintiff in 2016. (Compl. ¶¶ 56–57.)

30. Plaintiff alleges that Defendant used Confidential Information to induce Mr. Morrison to cancel his accounts with Plaintiff and open new accounts with Think Employer. (Compl. ¶¶ 57–58.)

31. Plaintiff brings the following claims for relief: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) misappropriation of trade secrets, (4) tortious interference with contract, and (5) unfair and deceptive trade practices. (Compl. 12–14, 16.)

## IV. LEGAL STANDARD

32. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all factual allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). Where the pleading refers to and depends on certain documents, the

Court may consider those documents without converting the Motion into one for summary judgment under Rule 56. *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).

33. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

## V.  ANALYSIS

34. Defendant contends that the Complaint fails to state a claim upon which relief can be granted because "[n]o property which has been or is proprietary to [Mr.] Bell or [the Corporation] has been stolen, used, or given by [Defendant]." (Mem. Supp. Mot. Dismiss 5.) Defendant argues that he has not breached any contract; the Confidentiality Agreement is vague and unenforceable; Cert-Today is owned by Southern Oak Property and Trade, LLC; and Defendant's actions have not financially injured Plaintiff. (Mem. Supp. Mot. Dismiss 5.)

35. As the Court is required to take all factual allegations of the Complaint as true in determining whether the Complaint states a claim upon which relief can be

granted, Defendant's assertions that the facts in the Complaint are incorrect or untrue may not properly be considered in ruling on the Motion. *See White v. White*, 296 N.C. 661, 667, 252 S.E.2d 698, 702 (1979) ("The function of a motion to dismiss is to test the law of a claim, not the facts which support it.").

36. The Court concludes that the allegations of the Complaint are sufficient to state claims for breach of contract, breach of the duty of good faith and fair dealing, misappropriation of trade secrets, and unfair and deceptive trade practices. On the other hand, the Court concludes that the allegations of the Complaint are insufficient to state a claim for tortious interference with contract.

A.    Breach of Contract

37. In support of the Motion with respect to the breach of contract claim, Defendant contends that Mr. Bell did not develop a software program, Defendant was wrongfully terminated, Mr. Morrison did not have a contract with the Corporation, and the Corporation-issued laptop was personal property. (Mem. Supp. Mot. Dismiss 6–7.) As discussed above, these factual contentions may not be considered by the Court in ruling on the Motion.

38. Defendant further contends that the Confidentiality Agreement is unenforceable because it is vague, overbroad, and unreasonable. (Mem. Supp. Mot. Dismiss 7.)

39. The elements of a breach of contract claim are "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). The requirements of a valid contract are (1) assent,

(2) mutuality of obligation, and (3) definite terms. *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 6–8, 748 S.E.2d 171, 176–77 (2013). "[T]he terms of a contract must be sufficiently definite that a court can enforce them." *Wein II, LLC v. Porter*, 198 N.C. App. 472, 480, 683 S.E.2d 707, 713 (2009).

40. The allegations of the Complaint sufficiently plead the existence of a valid contract. Defendant's assent to the Confidentiality Agreement is shown by his signature to the Confidentiality Agreement. *Mosely v. WAM, Inc.*, 167 N.C. App. 594, 599, 606 S.E.2d 140, 143 (2004) ("When a party affixes his signature to a contract, he is manifesting his assent to the contract."). In exchange for Defendant's agreement to the terms of the Confidentiality Agreement, the Corporation hired Defendant for full-time employment, thereby satisfying the consideration requirement. *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 597, 632 S.E.2d 563, 571 (2006) (stating that employment is valuable consideration).

41. Further, the Confidentiality Agreement's definition of "Confidential Information," and the other terms of the agreement, are sufficiently definite to enable the Court to enforce the agreement. The Confidentiality Agreement is limited to non-public information disclosed between the parties, and written materials and discussions related to the Corporation's business. The Confidentiality Agreement sets forth specific Confidential Information, such as "financial information, development plans, marketing plan, business opportunities, personnel, and research." (Confidentiality Agreement ¶ 1.) Therefore, the Complaint sufficiently alleges the existence of a valid contract.

42. As to Defendant's contention that the Confidentiality Agreement is overbroad and unreasonable, North Carolina courts have upheld agreements that merely prevent an employee from disclosing or using the employer's confidential information, rather than prohibiting the employee from engaging in a competing business, as protecting a legitimate business interest of the employer. *Chemimetals Processing v. McEneny*, 124 N.C. App. 194, 197, 476 S.E.2d 374, 376 (1996) ("An agreement is not in restraint of trade, however, if it does not seek to prevent a party from engaging in a similar business in competition with the [employer], but instead seeks to prevent the disclosure or use of confidential information."); *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *10 (N.C. Super. Ct. Oct. 15, 2015).

43. Here, the Confidentiality Agreement merely prevents Defendant from disclosing Confidential Information, and does not bar Defendant from working for a competitor of the Corporation. Therefore, the Court concludes that the Confidentiality Agreement is not a restraint on trade and protects a legitimate business interest of the Corporation.

44. The allegations of the Complaint sufficiently plead that Defendant breached the Confidentiality Agreement by using Confidential Information—specifically, the Staff Pro+ computer programming code—to create Cert-Today, and by using Confidential Information to contact Mr. Morrison.

45. Therefore, the Court concludes that the allegations of the Complaint are sufficient to state a claim for breach of contract against Defendant, and the Motion as to that claim is denied.

B.    Breach of the Duty of Good Faith and Fair Dealing

46.    "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002) (quoting *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)).

47.    The Court has concluded that the Complaint sufficiently alleges the existence of a valid contract between Plaintiff and Defendant.    Further, the Complaint alleges that Defendant disclosed or misused Confidential Information, thereby breaching the contract, in order to establish a software that competes with Staff Pro+.  These allegations are sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.  As a result, the Motion as to that claim is denied.

C.    Misappropriation of Trade Secrets

48.    "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 367 (2004).

49.    The Complaint identifies the trade secret, Staff Pro+ code, with sufficient particularity to state a claim for misappropriation of trade secrets.  The Complaint alleges that Defendant should have known that Staff Pro+'s code was a trade secret,

and Defendant signed a Confidentiality Agreement that prohibited Defendant's use and disclosure of Staff Pro+. The Complaint alleges that Defendant misappropriated the Staff Pro+ code to create a substantially similar program, Cert-Today, without Plaintiff's consent.

50. Therefore, the Court concludes that the allegations of the Complaint are sufficient to state a claim for misappropriation of trade secrets, and the Motion as to that claim is denied.

D.     Tortious Interference with Contract

51. The elements of a tortious interference with contract claim are

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016) (quoting *United Labs, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). In the absence of an enforceable covenant not to compete, a competing party is "free to engage in routine business competition." *Id.* at 701, 784 S.E.2d at 462; *see also Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221–22, 367 S.E.2d 647, 649–51 (N.C. 1988) (noting "competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful"). In order to establish that a competitor is not justified in inducing a third party to breach a contract, "[a] complainant must show that the

defendant acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of the defending party." *Sellers v. Morton*, 191 N.C. App. 75, 82, 661 S.E.2d 915, 921 (2008).

52. The allegations of the Complaint are insufficient to state a claim for tortious interference with contract. The Complaint sufficiently alleges the first, second, third, and fifth elements of a tortious interference with contract claim—that a valid contract existed between Plaintiff and Mr. Morrison, Defendant had knowledge of the contract, and Defendant induced Mr. Morrison to breach the contract, which resulted in damages to Plaintiff.

53. The Complaint further alleges, however, that Defendant is operating a competing business, Think Employer. The Complaint does not allege that Defendant or Mr. Morrison entered into covenants not to compete with Plaintiff or that Defendant acted with malice and "for a reason not reasonably related to the protection of a legitimate business interest." Therefore, Plaintiff has failed to allege that Defendant acted without justification, rather than in routine business competition with Plaintiff.

54. The Court concludes that Plaintiff's allegation that Defendant is a direct competitor, without more, reveals an absence of fact necessary to support Plaintiff's claim for tortious interference with contract, and the Motion as to that claim should be granted.

55. "The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . ." *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191,

749 S.E.2d 289, 292 (2013). The Court concludes, in the exercise of its discretion, that dismissal of Plaintiff's tortious interference with contract claim, at this stage, should be without prejudice to Plaintiff reasserting such claim by way of a motion seeking leave to amend the Complaint in the event discovery uncovers facts sufficient to support an allegation of malice.

E.     North Carolina Unfair and Deceptive Trade Practices

56.     The elements of an unfair and deceptive trade practices claim under N.C. Gen. Stat. § 75-1.1 are "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (alteration in original). Misappropriation of trade secrets constitutes an unfair or deceptive act. *Medical Staffing Network, Inc. v. Ridgeway*, 194 N.C. App. 649, 659–60, 670 S.E.2d 321, 329 (2009). The Supreme Court of North Carolina has interpreted "commerce" to mean "business activities." *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010); *Powell v. Dunn*, 2014 NCBC LEXIS 3, at *8 (N.C. Super. Ct. Jan. 28, 2014). "The term 'business activities' . . . connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *White*, 364 N.C. at 52, 691 S.E.2d at 679 (omission in original) (quoting *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991)).

57. The Complaint sufficiently alleges that Defendant committed an unfair or deceptive act in or affecting commerce, which caused damage to Plaintiff. The Complaint alleges that Defendant misappropriated the Corporation's trade secret, the Staff Pro+ computer programming code, and that Defendant is using the misappropriated trade secret in the operation of his competing business, Think Employer. Plaintiff alleges that, as a result, Plaintiff has been injured in the form of lost profits and other monetary damages.

58. Therefore, the Court concludes that the allegations of the Complaint are sufficient to state a claim for unfair and deceptive trade practices, and the Motion as to that claim is denied.

## VI. CONCLUSION

59. For the foregoing reasons, the Court hereby **DENIES in part** and **GRANTS in part** the Motion as stated herein. Plaintiff's claim for tortious interference with contract is hereby **DISMISSED without prejudice**.

**SO ORDERED**, this the 15th day of February, 2017.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases