NO. COA13-686

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

DUKE ENERGY CAROLINAS, LLC,
     Plaintiff

     v.

BRUTON CABLE SERVICE, INC.,          Randolph County
     Defendant/Third-Party            No. 11 CVS 1771
     Plaintiff

     v.

ROBERT WAYNE TAYLOR and wife, LOIS
K. TAYLOR; DAVIS-MARTIN-POWELL AND
ASSOCIATES, INC., and JON ERIC
DAVIS,
     Third-Party Defendants

Appeal by defendant/third-party plaintiff from order entered 11 October 2012 by Judge Lucy N. Inman in Randolph County Superior Court. Heard in the Court of Appeals 6 November 2013.

> *Biesecker, Tripp, Sink & Fritts, L.L.P., by Joe E. Biesecker, for third-party plaintiff-appellant Bruton Cable Service, Inc.*

> *Pharr Law, PLLC, by Steve M. Pharr, for third-party defendant-appellees Davis-Martin-Powell and Associates, Inc. and Jon Eric Davis.*

CALABRIA, Judge.

Defendant/third-party plaintiff Bruton Cable Service, Inc. ("Bruton") appeals from an order granting summary judgment in favor of third-party defendants Davis-Martin-Powell and Associates, Inc. ("DMP") and Jon Eric Davis ("Davis") (collectively "defendants"). Bruton voluntarily dismissed its claims against third-party defendants Robert Wayne Taylor and Lois K. Taylor ("the Taylors") on 29 April 2013. Duke Energy Carolinas, LLC ("Duke") voluntarily dismissed its claims against Bruton on 2 May 2013. Neither the Taylors nor Duke are parties to the instant appeal. We reverse.

## I. Background

In April 2005, Bruton, a North Carolina corporation, purchased Lots 7 and 59 ("the property") from the Taylors. The property was located in the Randolph Hills Subdivision, Phase II ("the subdivision"), in Randolph County, North Carolina. Prior to Bruton's ownership of the property, DMP, a North Carolina corporation engaged in the business of surveying, engineering, and land planning, prepared the plat. Davis, a DMP employee and registered surveyor, certified the plat that was recorded on 8 July 2003 at Plat Book 84, Page 95 at the Randolph County Register of Deeds. The final recorded plat showed Duke's right-

of-way easement (the "Duke easement" or "Duke's easement") pursuant to an agreement dated 20 May 1970.

According to Davis' plat, Duke's easement extended 150 feet over and across Lots 7 and 59 of the subdivision. Relying on the information in the recorded final subdivision plat ("the plat") depicting a 150-foot Duke easement, Bruton planned the location of single-family homes and a septic tank repair and drain field on the property. Bruton began construction in 2006.

On 31 October 2006, Duke representative Ervin Summers ("Summers") visited the property to determine whether the construction was within Duke's easement. Summers then sent Bruton a letter dated 8 February 2007 stating Duke's objection to all encroachments that existed within Duke's deeded and recorded 200-foot easement for the property. Summers requested the removal of the encroachments on Duke's easement. At the time Bruton received Duke's letter, the house on Lot 59 was almost complete and the house on Lot 7 was approximately 60% complete. Bruton also sent DMP several letters regarding the encroachment due to the inaccurate survey.

On 7 July 2011, since the parties were unsuccessful in negotiations regarding the disputed easement, Duke filed a complaint against Bruton alleging that a portion of Bruton's

house that was under construction encroached upon Duke's easement, and sought, *inter alia*, an order to remove the encroachment from the 200-foot wide electrical transmission line easement. Duke also sought a permanent injunction against Bruton, prohibiting it from further interfering with Duke's ability to protect the safety of the public, provide reliable electrical service to the public, and properly and safely maintain its transmission lines.

On 22 December 2011, Bruton filed an answer and a third-party complaint against DMP and Davis. In its answer, Bruton denied liability and acknowledged that any alleged liability was the result of Bruton's reasonable and justifiable reliance upon defendants' actions, representations, and warranties that the Duke easement was 150 feet wide.

In its third-party complaint against defendants, Bruton alleged, *inter alia*, that

> DMP and Davis, in the course of their business and profession, prepared the final map for the Randolph Hills Subdivision, Phase II, for the benefit of persons who would acquire Lots 7 and 59. [Defendants] reasonably knew that a purchaser of Lots 7 and 59 would reasonably rely on the information and representation contained in that survey as shown on the map.
>
> 33. In performing the services necessary for the production of the map . . . [defendants]

were required to comply with the provisions of N.C.G.S. § 47-30(f)(8). [Defendants] did not comply with that statute. The failure to comply with that statute caused [Bruton] to incur damages. That statute was enacted for the benefit and protection of the general public. [Bruton], as a purchaser of Lots 7 and 59 and as a member of the general public, is one of the class of persons for whose benefit [defendants] supplied the information and statements shown on the plat. [Bruton] is a person for whose protection that statute was enacted by the legislature. Although [Bruton] was not personally aware of the defect in the map, [Bruton] was entitled to rely on the accuracy of that map. [Defendants] knew or should have known that members of the public such as [Bruton] and other purchasers of lots in that subdivision would rely on the accuracy of that map.

34. On or about 29 April 2005 [Bruton] acquired ownership of Lots 7 and 59, Phase II, Randolph Hills Subdivision according to the plat which is duly recorded in Plat Book 84, Page 95 in the Register of Deeds of Randolph County, North Carolina.

. . .

37. [Bruton] reasonably relied on [defendants'] representation of the [Duke] easement as shown on the final recorded map.

38. After acquiring the two lots, [Bruton] began construction of a house on each lot in late 2006. Each house was located in order to comply with the required set-back and zoning limits, the requirements of the Restrictive Covenants, other applicable laws and rules and outside the [Duke] easement as shown on the plat prepared by [defendants]. [Bruton's] agents relied on the plat.

39. On or about February 10, 2007, [Bruton] received a letter dated February 8, 2007 from [Duke]. The letter asserted that [Duke] had a 200-foot wide easement on Lots 7 and 59. [Duke] informed [Bruton] that no portion of either house, driveway, septic system or other improvements could be located within any area of the 200-foot wide easement.

. . .

41. When [Bruton] received that letter, the house on Lot 59 was almost complete and the house on Lot 7 was approximately sixty percent (60%) complete. To mitigate possible damages, [Bruton] ceased work on each house and incurred expenses to relocate the septic tank system on Lot 59 outside of the alleged Duke easement. Approximately 50% of the house on Lot 7 is within the alleged [Duke] easement. If the Court grants [Duke] any or all the relief it requests, the house on Lot 7 will have to be disassembled and demolished. Both houses were planned as single-family residences.

42. [Bruton] spent approximately $191,301.90 for Lot 7 and construction of the house on Lot 7. [Bruton] spent approximately $224,821.23 for Lot 59 and construction of the house on Lot 59. [Bruton] will have to remove the house on Lot 7 and remove the unused septic system from encroaching on the easement. [Bruton] will incur expenses.

43. [Defendants] were negligent in that they failed to accurately identify and locate the [Duke] easement on the map . . . as required by N.C.Gen.Stat. [sic] § 47-30(f)(8) and other applicable law. Such failure constitutes negligence. [Defendants] failed to exercise that care and competence in

obtaining and communicating accurate information regarding the [Duke] easement. [Defendants] negligently misrepresented the accurate width of the [Duke] easement. The actions of [defendants] constitute a mistake on their part.

44. As a direct and proximate result of [defendants'] negligence, [Bruton] has been damaged in an amount incurred or to be incurred in excess of $10,000.00 for purchase price of each lot, construction of each house, removal of the house on Lot 7 and removal of the septic tank system on Lot 59.

45. [Bruton] could not have prevented the damages it has incurred or will incur.

On 9 January 2012, defendants filed an answer to Bruton's third-party complaint. As one of the affirmative defenses, defendants alleged Bruton's claims were barred by the statute of limitations. On 18 July 2012, defendants filed a motion to dismiss the complaint, and in the alternative, a motion for summary judgment. After a hearing on 17 September 2012, at which defendants specifically argued that Bruton's claim was time-barred by the statute of limitations, the trial court granted summary judgment in favor of defendants. Bruton appeals.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record

shows that 'there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "A genuine issue of material fact arises when the facts alleged . . . are of such nature as to affect the result of the action." *N. Carolina Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011) (citation and quotation marks omitted). In a summary judgment motion, the court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to see if there is any genuine issue of material fact. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013). This Court reviews the pleadings and all other evidence in the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Sadler*, 365 N.C. at 182, 711 S.E.2d at 117.

## III. Summary Judgment

Bruton argues that the trial court erred in admitting unsworn letters and considering them in the decision to grant defendants' motion for summary judgment, and more importantly by basing that decision on the statute of limitations. We agree.

A. Admission of Correspondence

As an initial matter, submitted affidavits must meet the requirements of Rule 56(e) of the North Carolina Rules of Civil Procedure: "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2013). Unsworn letters and correspondence are not the type of evidence considered by the court pursuant to Rule 56, and should not be considered during summary judgment. *Strickland v. Doe*, 156 N.C. App. 292, 296, 577 S.E.2d 124, 129 (2003). Instead, "parties are required to set forth facts in affidavits or as otherwise provided." *Id.*, 577 S.E.2d at 129 (quotation marks omitted). *See also Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 709, 582 S.E.2d 343, 345-46 (2003) (unsworn statements and inadmissible hearsay "cannot be relied upon" in a summary judgment motion).

In the instant case, defendants introduced several letters between Bruton's counsel and defense counsel purporting to support their summary judgment motion. While defendants contend the letters were offered for the purpose of showing Bruton's awareness of damages, the reason for offering the letters does

not negate the fact that the letters themselves were unsworn correspondence that did not comply with the requirements of Rule 56.

Bruton also argues that the letters should not have been admitted because they contained impermissible hearsay, legal opinions and presumptions, and statements in the course of settlement negotiations. However, since the trial court erred by improperly considering unsworn correspondence between Bruton's counsel and defense counsel, and defendants did not comply with the requirements of Rule 56, it is unnecessary to address these arguments.

B. Statute of Limitations

In addition to considering unsworn correspondence, we address whether the Bruton's third-party action was barred by the statute of limitations.

To determine whether Bruton timely filed its third-party complaint, we must determine when Bruton, as the aggrieved party, became entitled to maintain an action. Bruton specifically alleged in the third-party complaint that defendants, as registered land surveyors, negligently misrepresented the accurate width of the Duke easement. According to our Supreme Court in *Raftery v. Wm. C. Vick Constr.*

*Co.*, a statute of limitations begins to run against an aggrieved party when that aggrieved party becomes entitled to maintain an action for the wrongful act that was committed. 291 N.C. 180, 186-87, 230 S.E.2d 405, 408 (1976) (citation omitted). In a claim specifically alleging negligent misrepresentation, the cause of action accrues when two events occur: (1) the claimant discovers the misrepresentation, and (2) the claimant suffers harm because of the misrepresentation. *Guyton v. FM Lending Servs., Inc.*, 199 N.C. App. 30, 35, 681 S.E.2d 465, 478 (2009) (citation omitted).

Although defendants contend that N.C. Gen. Stat. § 1-52(16) should apply, N.C. Gen. Stat. § 1-52(18) specifically excludes § 1-52(16) and includes § 1-47(6). Pursuant to N.C. Gen. Stat. § 1-52(18) (2013), a three-year limitation applies to actions "[a]gainst any registered land surveyor . . . or any person acting under his supervision and control for physical damage or economic or monetary loss due to negligence or a deficiency in the performance of surveying or platting as defined in G.S. 1-47(6)." According to N.C. Gen. Stat. § 1-47(6), an action against any registered land surveyor and any person acting under his supervision or control for physical damage or for economic or monetary loss due to negligence in the performance of

surveying or platting must be commenced "within 10 years after the last act or omission giving rise to the cause of action." N.C. Gen. Stat. § 1-47(6)(a) (2013). This limitation applies *to the exclusion of* N.C. Gen. Stat. § 1-52(16). N.C. Gen. Stat. § 1-47(6)(c) (2013).

Since Davis is a registered land surveyor, DMP is a company specifically engaged in surveying and platting, and this appeal involves a complaint based upon negligent surveying that caused Bruton to suffer property damage and economic loss due to defendants' negligent survey, N.C. Gen. Stat. §§ 1-52(18) and 1-47(6) both apply. However, both statutes provide differing limitation periods for actions against registered land surveyors. Pursuant to *Fowler v. Valencourt*, "[w]here one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." 334 N.C. 345, 349, 435 S.E.2d 530, 532 (1993) (citations omitted). "Moreover, where there is doubt as to which of two possible statutes of limitation applies, the rule is that the longer statute is to be selected." *Id*. at 350, 435 S.E.2d at 533 (citation omitted). Therefore, the ten-year limitation period applies.

In the instant case, Bruton officially discovered defendants' misrepresentation in the survey regarding the location of the easement when Bruton received Summers' letter dated 8 February 2007 regarding the encroachments on Duke's easement. Duke filed a complaint against Bruton on 7 July 2011. Bruton, as the aggrieved party in Duke's complaint, was then entitled to maintain a cause of action against the third-party defendants for negligent misrepresentation of the easement.

Since Duke's allegations caused Bruton economic loss, Bruton filed an answer and third-party complaint against defendants on 22 December 2011, alleging, *inter alia*, that Bruton reasonably relied upon the representation in the plat prepared by Davis depicting Duke's right of way as 150-feet wide. Since Bruton promptly filed its third-party action against defendants after receiving the Duke action, we hold that pursuant to N.C. Gen. Stat. § 1-47(6), which is the more specific statute, Bruton commenced its action within 10 years of the last act giving rise to the cause of action. The trial court erred by granting summary judgment for defendants. Bruton's third-party complaint for negligent misrepresentation against defendants was timely filed and was not time-barred.

Defendants contend that Bruton's claim for negligent misrepresentation of the easement accrued in 2006, when Summers initially visited the property. However, even if Bruton's claim accrued in 2006, the third-party complaint was still filed within 10 years, and thus timely filed pursuant to N.C. Gen. Stat. § 1-47(6).

## IV. Validity of Third-Party Action

Since we conclude that Bruton's third-party complaint was timely filed and not time-barred by the applicable statute of limitations, the final issue is whether Bruton was permitted to file its third-party action. Defendants contend that Bruton's claim is an inappropriate direct action disguised as a third-party action.

Pursuant to Rule 14, "any time after commencement of the action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." N.C. Gen. Stat. § 1A-1, Rule 14(a) (2013). Since Bruton's third-party complaint specifically alleges "that the third-party defendants are liable to Bruton Cable for all or part of [Duke's] claims against Bruton Cable,"

Bruton's third-party complaint alleges indemnity with language mirroring in part that of Rule 14(a).

Defendants also contend that Bruton's negligent misrepresentation claim is inappropriate because a third-party plaintiff may only assert derivative damages against a third-party defendant. However, Rule 18 of the North Carolina Rules of Civil Procedure states that "[a] party asserting a claim for relief as an original claim, counterclaim, cross claim, or third-party claim, may join, either as independent or alternate claims, as many claims, legal or equitable, as he has against an opposing party." N.C. Gen. Stat. § 1A-1, Rule 18(a) (2013). Since Bruton properly alleges indemnification pursuant to Rule 14 in the third-party complaint, the joinder of claims is permissible pursuant to Rule 18.

## V. Conclusion

Bruton's third-party complaint alleged negligent misrepresentation for justifiably relying to its detriment on defendants' misrepresentation of the accurate width of the Duke easement in the recorded plat. As a result, Bruton suffered physical damage and economic or monetary loss. Because N.C. Gen. Stat. § 1-47(6) applies pursuant to *Fowler*, Bruton was required to file its third-party complaint within 10 years of

the last act or omission giving rise to the cause of action. Bruton's third-party complaint was properly filed pursuant to the North Carolina Rules of Civil Procedure within 10 years of both Summers' visit to the property in October 2006 *and* the official letter from Duke in February 2007.  In the light most favorable to Bruton as the nonmoving party, defendants are not entitled to judgment as a matter of law.  For these reasons, summary judgment should have been denied.  We reverse.

Reversed.

Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.