IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 15-598

Filed: 7 June 2016

McDowell County, No. 13 CVS 56

TD BANK, N.A., Plaintiff,

v.

RICKY NEAL WILLIAMS, Defendant.

Appeal by Defendant from an order entered 8 December 2014 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 18 November 2015.

*Ward and Smith, P.A., by Lance P. Martin and Norman J. Leonard, for Plaintiff-Appellee.*

*David R. Payne, P.A., by David R. Payne, for Defendant-Appellant.*

HUNTER, JR., Robert N., Judge.

Ricky Williams ("Williams") appeals from the trial court's grant of summary judgment in favor of TD Bank. Williams argues genuine issues of material fact existed relating to the proceeds from a foreclosure sale. He also contends the trial court erred by dismissing three counterclaims. We affirm in part and dismiss in part.

## I. Factual and Procedural History

Williams, individually or as a Trustee, Steak House Inc., and Shuttle Services Inc. (business entities controlled by Williams), borrowed money from the Bank, guaranteed loans and secured the loans to the Bank in the following manner:

**1. Williams Note**:

On or about 5 March 2004, Williams signed an installment promissory note in the principal amount of $160,000 bearing interest at the rate of five percent (5%) to Carolina First Bank ("the Williams Note"). Repayment was to be made in 60 installments of $1,271.46, with a final payment of the remaining unpaid balance due 5 March 2009. The note reflects this loan was secured by an assignment of leases and rents, an assignment of investment property, and a deed of trust on property at Circle Street. The Assignment of Investment Property assigns Carolina First Bank a securities account held by UVEST Financial Services in the name of Williams to secure the Williams Note. The record does not contain a copy of the assignment of leases and rents or the deed of trust. The loan file for the Williams Note contained a Securities Entitlement Control Agreement dated 8 March 2004 naming Carolina First Bank as the secured party, Williams as the debtor, and UVEST as the securities intermediary. The property subject to the securities agreement included a securities account held by UVEST Financial Services in the name of Williams. Williams claims the Securities Entitlement Control Agreement is a product of forgery.

**2. Steak House Note:**

On or about 27 March 2007, The Steak House, Inc., a North Carolina corporation, signed an installment promissory note in the principal amount of $850,000 bearing interest at the rate of seven and three-quarters percent (7¾%) to Carolina First Bank ("the Steak House Note"). The note was to be paid back in monthly installments of $7,039.39 with a balloon payment of the remaining balance at the end of five years on 27 March 2012. Simultaneously, Williams executed a guaranty, promising to pay the Steak House Note in the event that Steak House, Inc. failed to pay the note. In addition, Williams, as Trustee of the Ricky Williams Revocable Trust, signed a deed of trust dated 27 March 2007 conveying property at Sterling Street in Morganton to MTNBK, Ltd. in trust for the benefit of Carolina First Bank to be sold to pay the Steak House Note upon default.

**3. Shuttle Truck Note:**

On or about 25 June 2007, Shuttle Truck Service, Inc., a North Carolina corporation, signed an installment promissory note in the principal amount of $700,000 bearing interest at seven and three-quarters percent (7¾%) per annum ("the Shuttle Truck Note"). The note was to be repaid in 60 installments of $5,805.54 with a balloon payment on 2 July 2012 of the remaining balance. According to the loan agreement, this loan is secured by the following property: an assignment of leases and rents and a deed of trust on property at US 221 North. The record does not contain a copy of these documents. Additionally, the loan was cross-collateralized

with the Steak House Note. The Shuttle Truck Note was personally guaranteed by Williams on the date it was signed.

When the Williams Note matured on 5 March 2009, Williams was unable to pay the balance on the note, and he requested that the bank extend the maturity date. On 5 March 2009, Williams and Carolina First Bank agreed to extend the maturity date of the Williams note for 60 days. On 20 May 2009, the parties again extended the maturity date for an additional 60 days.

When the Williams Note matured again, Williams and Carolina First Bank agreed to enter into a new loan. At the request of Carolina First Bank, UVEST liquidated $10,000 from Williams's brokerage account on 21 August 2009 to pay delinquent property taxes. On 27 August 2009, Carolina First Bank closed on the loan renewal. The Williams Note was refinanced by a new loan evidenced by a new promissory note signed by Williams payable to Carolina First Bank in the principal amount of $148,000 at an interest rate of seven and three-quarters percent (7¾%) per annum. The new loan paid off the 5 March 2004 loan, which had a remaining balance of $137,387.42. In the second Williams Note, there are three recitals as follows:

> 9. LOAN PURPOSE. The purpose of this Loan is RENEW AND ADD ADDITIONAL COLLATERAL TO MATURED LOAN $10M NEW MONEY TO COVER APPRAISAL COST ON THREE COMMERCIAL PROPERTIES.

> 10. ADDITIONAL TERMS. THIS LOAN IS CROSS COLLATERALIZED WITH LOAN ----1911 IN THE NAME OF THE STEAK HOUSE, INC IN THE AMOUNT OF

$850,000.00, DATED MARCH 27, 2007 SECURED BY REAL ESTATE AND EQUIPMENT.

11. SECURITY. The Loan is secured by separate security instruments prepared together with this Note as follows:

Document Name; Parties to Document

Leases And Rents Assignment – 1610 MAIN STREET; J & R'S FOOD, INC.

Leases And Rents Assignment – 2115 S. STERLING STREET; THE RICKY N. WILLIAMS REVOCABLE TRUST

Assignment of Investment Property/Securities – Account Number ----7087; RICKY N. WILLIAMS

Deed of Trust – 2115 S. STERLING STREET; THE RICKY N. WILLIAMS REVOCABLE TRUST

Deed of Trust – 1610 MAIN STREET; J & R'S FOOD, INC.

and by the following, previously executed, security instruments or agreements: ASSIGNMENT OF INVESTMENT PROPERTIES/SECURITIES HELD IN THE NAME OF RICKY N. WILLIAMS ISSUED MARCH 5, 2004 SECURED BY UVEST FINANCIAL SERVICES ACCOUNT # ----7087

On 17 November 2009, Shuttle Truck Service, Inc. and Carolina First Bank entered into an agreement modifying the Shuttle Truck Note. According to the bank, the modification agreement included an agreement that Williams would liquidate the balance of his UVEST brokerage account and apply the remaining balance to the Williams Note. However, the modification contract does not reflect that

understanding. UVEST liquidated the remaining balance, $94,058.76 from the account on 30 November 2009.

On 30 September 2010, Carolina First Bank merged into TD Bank, N.A.. The assets including the loans and the secured properties underlying these three notes were transferred to TD Bank as Carolina First Bank's successor in interest.

According to the complaint, The Steak House, Inc. defaulted on its loan. The record does not contain a payment history on the Steak House note, a date of default, or a demand letter requesting payment in full. On 12 October 2010, Williams failed to make a payment on the Williams Note, and was assessed a late fee of $56.10. Williams was assessed four additional late fees and made no additional payments on his personal loan. The record does not contain a demand letter requesting payment in full of the Williams Note. According to the final report of sale, the Trustee foreclosed on the Williams Revocable Trust property by bidding in the amount of $595,000. The final report states that of this sum $591,850.40 went to pay the obligations owed on the Williams Note and the Steak House Note. TD Bank was the successful bidder at the sale of the property.

On 22 January 2013, TD Bank filed a verified complaint seeking monetary damages from Williams on the basis of his breach of guaranty of the Steak House Note and for his failure to pay the Williams Note. In addition to monetary damages, TD Bank sought attorneys fees of 15% of the amount of the outstanding indebtedness

on the basis of N.C. Gen. Stat. § 6-21.2.  The record contains no summons so we are unable to discern when service was returned.

On 13 May 2013, Williams responded to the complaint by filing a Rule 12(b)(6) motion to dismiss, an unverified answer containing general denials to some of the allegations in the complaint and defenses to liability under the Deficiency Judgment Act.  Subsequently, Williams sought to amend his answer by filing a "Proposed Amended Answer" to add additional defenses and include a counterclaim for negligence, negligent entrustment, and a Chapter 75 violation for unfair and deceptive trade practices.  However, there is no order allowing the proposed amendment to the complaint in our record.

On 30 October 2014, TD Bank filed an "amended" motion for summary judgment.  With its motion, TD Bank filed four affidavits and the transcript from Williams's deposition together with supporting documents.  The affidavits and deposition are described below.

The affidavit of Elizabeth Walker, previously the Vice President and City Executive for TD Bank in Marion, North Carolina, establishes Walker was involved in Carolina First Bank's relationship with Williams and his corporations.  Walker stated that she "had many conversations with Williams and his accountant, Frank Biddix, concerning the loans because they were often past due or because the bank often received only partial payments on some of the loans."  She described all of the

loans as "seriously delinquent." Additionally, the closing on the renewal of the Williams Note was delayed when Carolina First Bank discovered Williams owed delinquent real property taxes. Walker sent UVEST a letter authorizing them to liquidate $10,000 for the purpose of paying Williams's delinquent taxes. Shuttle Truck defaulted on its note in 2009. On 17 November 2009, Williams requested the bank modify the Shuttle Truck Note rather than exercise the Bank's rights of default under that note. Carolina First Bank agreed, allowing Shuttle Truck, Inc. to make interest-only payments for six months in return for Williams agreeing to liquidate the remaining balance of his brokerage account to reduce the amount owed on the Williams Note. Walker contacted UVEST on 24 November 2009, authorizing them to liquidate the remaining balance of the brokerage account. Until 11 July 2011, Williams continued to make monthly payments on the Williams Note. However, the attached payment history does not contain any records from 10 November 2010 through 8 November 2013.

The second affidavit, the affidavit of Shelley McTaggart, the Vice President of TD Bank, contained the following in support of the bank's motion for summary judgment. After default on the Steak House Note, TD Bank commenced foreclosure proceedings in Burke County. The bank's bid of $595,000 was the only bid for the property. After applying the proceeds of the sale to expenses of the foreclosure proceeding and the Steak House Note, a balance of $238,940.71 remained on the

Steak House Note. She also explained the UVEST account securing the Williams Note was maintained by UVEST Financial Services, not Carolina First Bank. She admits a clerical error in some documents in the loan file which list Carolina First Bank as the holder of the account. UVEST has never been a subsidiary or affiliate of Carolina First Bank or TD Bank.

Terri Payne, the Vice President of Client Support Services of LPL Financial ("LPL"), a custodian of records for UVEST Financial Services, executed an affidavit for LPL. LPL is an affiliate of UVEST. In 2004, Williams registered an individual brokerage account with UVEST. The account was opened under the name Carolina First Collateral Account for Benefit of Ricky N. Williams. UVEST held the account as collateral for a loan with Carolina First Bank. The account was opened with the instruction that "it is acceptable to distribute cash and future dividends off this account to the customer. Trading, however, should be limited as to not drop below the value of the account at the time the loan was closed." In January 2006, Williams bought shares in Enterra Energy. Williams initiated the purchase. In January 2007, Williams sold his shares in Enterra as well as shares in Ford Motor Company. The trade confirmation represents the sale was solicited by a UVEST representative. The same month, Williams bought mutual funds in the amount of $130,000. On 21 August 2009, UVEST liquidated securities in the account in the amount of $10,000 and tendered a check in that amount to Carolina First Bank. At the request of

Carolina First Bank, UVEST liquidated the remainder of the account on or about 30 November 2009, tendering a check to Carolina First Bank in the amount of $94,058.76. She also noted the value of the brokerage account declined over time between 2004 and 2009 due to the stock market decline.

Finally, TD Bank filed an affidavit of David Wooten, a former Market Executive for the Marion office of Carolina First Bank, in support of its motion for summary judgment. Wooten was involved in the bank's loan to Williams in his individual capacity. Wooten did not forge Williams's name on the loan documents, including the Assignment of Investment Properties, nor does he have reason to believe any other person at Carolina First Bank forged Williams's signature.

TD Bank also filed a deposition of Williams with its motion for summary judgment. In his deposition, Williams explained he was the president and sole shareholder of The Steak House, Inc. He bought a Western Sizzlin' and converted it into The Steak House. Since 2008, the restaurant has generated no revenue and has no employees. Williams is also the president of Shuttle Truck Service, Inc. Shuttle Truck Service is a truck stop that washes trailers and has a snack area. He bought the company from its previous owner.

In his deposition, Williams described his meeting at Carolina First Bank when he executed the Williams Note. He explained he discussed having an investment account as collateral for the loan with a man at the bank. Because of that

conversation, he thought UVEST and Carolina First Bank were part of the same company. He did not, however, recognize the Securities Control Agreement dated 5 March 2004. The Agreement, which was part of the Williams Note file, was executed when Williams lived in Michigan. As a result, Williams contends the Agreement was forged, because he did not live at the address listed on the Agreement at that time. He also said "this definitely is not my signature."

In response to TD Bank's motion for summary judgment, Williams filed a verified response and a cross motion for partial summary judgment related to the deficiency claim on 2 November 2015. The response contained the following factual allegations:

> 14. In 2009 as a result of the banking crisis across America the Defendant struggled to make payments to Carolina First Bank but was assured by Beth Walker of Carolina First Bank that the bank would work with him related to his loans. The real estate which secured the Morganton Steak House was valuable and he felt as if in the event of a potential foreclosure that the property would more than cover the value of the loan. The value of the property located at 2115 South [Sterling] Street in June of 2009 was $1,060,000.00.
>
> 15. The Defendant listed the property for $1,700,000.00 in 2009 and in August of 2011 he entered into a lease/option agreement with respect to the subject property in the amount of $1,500,000.00.

Attached to the response, Williams provided an appraisal of the property for $1,060,000 dated 16 June 2009, a listing agreement with a real estate agent listing

the sale price at $1,700,000 dated 16 March 2009, and a lease with purchase option in the amount of $1,500,000 dated 20 June 2011.

On 8 December 2014, the trial court entered an order granting summary judgment in favor of TD Bank. The order decreed TD Bank recover $296,402.27 in relief under the Steak House Note plus interest and reasonable attorneys fees as well as $46,744.80 on the Williams Note plus interest and reasonable attorneys fees. The trial court also dismissed Williams's counterclaims. Williams timely entered a Notice of Appeal.

## II. Jurisdiction

As an appeal from a final judgment of a superior court, jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b).

## III. Standard of Review

On appeal, an order granting summary judgment is reviewed *de novo*. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). Summary judgment is appropriate only when there is no genuine issue of material fact and any party is entitled to judgment as a matter of law. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

When reviewing the evidence on a motion for summary judgment, we review evidence presented in the light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). Moreover, "if the granting of

summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Wells Fargo Bank, N.A. v. Arlington Hills of Mint Hill, LLC*, 226 N.C. App. 174, 176, 742 S.E.2d 201, 203 (2013) (quoting *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989)).

## IV. Analysis

### A. Summary Judgment

N.C. Gen. Stat. § 45-21.36 makes a statutory defense available to loan obligors in actions brought by a lender to recover the deficiency following a foreclosure sale of the collateral. *Branch Banking and Trust Co. v. Smith*, __ N.C. App. __, __, 769 S.E.2d 638, 641–642 (2015). A deficiency judgment is an imposition of personal liability on a mortgagor for the unpaid balance of the mortgage debt after proceeds from a foreclosure sale have been applied to the debt, and failed to satisfy the total debt due. *Hyde v. Taylor*, 70 N.C. App. 523, 526, 320 S.E.2d 904, 906 (1984). The statute reads:

> When any sale of real estate has been made by a mortgagee, trustee, or other person authorized to make the same, at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation whose property has been so purchased, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and offset,

but not by way of counterclaim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and, upon such showing, to defeat or offset any deficiency judgment against him, either in whole or in part[.]

N.C. Gen. Stat. § 45-21.36 (2015).

A guarantor is entitled to the statutory defense as well, even if the borrower has been dismissed from the action. *Branch Banking and Trust*, __ N.C. App. at __, 769 S.E.2d at 642 (citing *Virginia Trust Co. v. Dunlop*, 214 N.C. 196, 198 S.E. 645 (1938)). By allowing guarantors to exert a defense under the statute in addition to the mortgagor, the statute "establishes an equitable method of calculating the indebtedness." *High Point Bank and Trust Co. v. Highmark Properties, LLC*, 368 N.C. 301, 305, 776 S.E.2d 838, 841 (2015).

In order to calculate the indebtedness, the statute requires the holder of the obligation to show "that the property sold was fairly worth the amount of the debt secured by at the time and place of sale or that the amount bid was substantially less than its true value." N.C. Gen. Stat. § 45-21.36 (2015). The burden of proof lies with the mortgagor or guarantor to provide evidence that at the time of sale either the property was worth more than the debt or that the mortgagee's bid was substantially less than its true value. *Branch Banking and Trust*, __ N.C. App. at __, 769 S.E.2d at 641. Under N.C. Gen. Stat. § 45-21.36, Williams is entitled to benefit from the

statutory defense because he is the mortgagor of the Williams Note and a guarantor of the Steak House Note.

Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." N.C. Gen. Stat. § 1A-1, Rule 56 (2015). A verified complaint or motion may be treated as an affidavit if it meets the above criteria. *See Wein II, LLC v. Porter*, 198 N.C. App. 472, 477, 683 S.E.2d 707, 711 (2009). At summary judgment, the non-moving party must set forth specific facts by affidavits, depositions, answers to interrogatories, and other means provided by Rule 56 to show a genuine issue of material fact exists. Any affidavit submitted at summary judgment must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." N.C. Gen. Stat. § 1A-1, Rule 56 (2015). Unsworn letters and correspondence are not the type of evidence considered by the court at summary judgment, and should not be considered. *Duke Energy Carolinas, LLC v. Bruton Cable Serv., Inc.*, 233 N.C. App. 468, 473, 756 S.E.2d 863, 866 (2014).

The central issue of this appeal is whether Williams has presented a forecast of evidence sufficient to raise a question of material fact. Under the issue to be

decided by the court, a property owner may testify to the value of his or her property. "Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value." *Goodson v. Goodson*, 145 N.C. App. 356, 361, 551 S.E.2d 200, 204 (2001) (quoting *N.C. Highway Comm. v. Helderman*, 285 N.C. 645, 652, 207 S.E.2d 720, 725 (1974)). This stems from the rule that lay persons may testify as to the value of real property "if the witness can show he has knowledge of the property and some basis for his opinion." *See Finney v. Finney*, 225 N.C. App. 13, 16, 736 S.E.2d 639, 642 (2013) (quoting *Whitman v. Forbes*, 55 N.C. App. 706, 711, 286 S.E.2d 889, 892 (1982)).

Here, Williams alleged TD Bank did not extract the full value of the property as a defense in his *unverified* answer filed 13 May 2013. He contends the value of the property was sufficient to pay the mortgage in full. Because the answer is unverified, it does not support a holding that Williams has forecast evidence that a genuine issue of material fact of value exists.

However Williams's motion for partial summary judgment was verified and contends that the Sterling Street property was fairly worth the amount of debt secured by it at the time and place of sale. At the time of the foreclosure sale, Williams owed $830,800.11 on the Steak House Note and $41,836.50 on the Williams Note, for a total of $872,636.61. The evidence presented by Williams that the property was worth more than the indebtedness is contained within Williams's

verified response to the motion for summary judgment. There he alleges the following facts:

> 14. In 2009 as a result of the banking crisis across America the Defendant struggled to make payments to Carolina First Bank but was assured by Beth Walker of Carolina First Bank that the bank would work with him related to his loans. The real estate which secured the Morganton Steak House was valuable and he felt as if in the event of a potential foreclosure that the property would more than cover the value of the loan. The value of the property located at 2115 South [Sterling] Street in June of 2009 was $1,060,000.00.
>
> 15. The Defendant listed the property for $1,700,000.00 in 2009 and in August of 2011 he entered into a lease/option agreement with respect to the subject property in the amount of $1,500,000.00.

Attached to Fact 14, Williams provided one page of an appraisal by a commercial appraising company, Miller & Associates, stating that on 10 June 2009 the Sterling Street Property was worth $1,060,000.00. With Fact 15, Williams provided a listing agreement, listing the sale price of the property at $1,700,000.00 dated 16 March 2009 and a lease with purchase option in the amount of $1,500,000.00 dated 29 June 2011. The attachments were not accompanied by supporting data or affidavits from the appraiser or the real estate professionals stating that on the date of the foreclosure the property was valued at these amounts. Furthermore, Williams himself does not aver that he has an opinion of the value of the property at the time of the foreclosure or that he relied on these documents in reaching this conclusion.

Finding no other verified evidence in the record supporting Williams's property value claim, we hold Williams fails to forecast evidence sufficient to create a question of material fact. Because Williams did not base the value of the property on his personal knowledge and because we have no alleged value from Williams at the time of sale, there is a lack of evidence to support Williams's claims that the property was worth more than the value obtained at the foreclosure sale. We therefore affirm the trial court's grant of summary judgment.

## B. Dismissed Claims

Williams filed a Proposed Amended Answer alleging negligence, negligent entrustment, and a Chapter 75 violation. Williams argues the trial court erred by dismissing these three claims. Because we find no order in the record showing the trial court allowed Williams to amend his answer, we cannot consider a "proposed" amended answer. If a necessary pleading is not contained in the record on appeal, the proper remedy is to dismiss the appeal. *Washington County v. Norfolk Southern Land Co.*, 222 N.C. 637, 638, 24 S.E.2d 338, 339–340 (1943).

## V. Conclusion

For the foregoing reasons, we affirm in part and dismiss in part.

AFFIRMED IN PART AND DISMISSED IN PART.

Judges STEPHENS and INMAN concur.